UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

WILLIAM J. NAIL,                          )
                                          )
          Plaintiff,                      )
                                          )
     v.                                   )     No.  4:20 CV 1422 CDP
                                          )
KILOLO KIJAKAZI, Acting                   )
Commissioner of Social Security,[1]       )
                                          )
          Defendant.                      )

## MEMORANDUM AND ORDER

Plaintiff William J. Nail brings this action under 42 U.S.C. § 405 seeking

judicial review of the Commissioner's final decision denying his claims for

disability insurance benefits (DIB) under Title II of the Social Security Act, 42

U.S.C. §§ 401, *et seq.*.  For the reasons that follow, I will reverse the decision and

remand for further proceedings.

### Procedural History

On April 18, 2018, the Social Security Administration denied Nail's

November 2017 application for DIB in which he claimed he became disabled on

January 1, 2012, because of dizziness, disorientation, vomiting, and seizures.  (Tr.

---

[1] On July 9, 2021, Kilolo Kijakazi became the Acting Commissioner of the Social Security Administration.  She is substituted for former Commissioner Andrew Saul as defendant in this action.  *See* Fed. R. Civ. P. 25(d).

184-85, 229).  Nail later amended his alleged onset date to May 1, 2015 (Tr. 224).

In May 2018, he claimed he also suffered from severe headaches and erratic sleep

patterns.  (Tr. 274).  A hearing was held before an Administrative Law Judge

(ALJ) on July 9, 2019, but the hearing was adjourned to allow Nail to seek

counsel.  (Tr. 68-71).  On November 27, 2019, a second hearing was held, in which

a vocational expert testified.  (Tr. 27-66).  On December 31, 2019, the ALJ denied

Nail's claims for benefits, finding that Nail was able to perform medium work, as

it is generally performed in the national economy.  (Tr. 11-20).  On July 31, 2020,

the Appeals Council denied Nail's request for review.  (Tr. 1-3).  The ALJ's

decision is thus the final decision of the Commissioner.

In this action for judicial review, Nail claims that the ALJ should have found

that he is disabled.  He argues that the ALJ improperly determined that his

vestibular and chronic migraine headaches did not medically equal a listed

impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1, and that the ALJ's RFC

assessment is not supported by substantial evidence.  Nail asks that I reverse and

remand the administrative decision for further evaluation.

## Medical Records and Other Evidence Before the ALJ

With respect to medical records and other evidence of record, I adopt Nail's

recitation of the facts set forth in his Statement of Uncontroverted Material Facts

(ECF 16-1) as admitted by the Commissioner with unrefuted additional facts (ECF

G / CLARK / 4 20 cv 1422 Nail SSA

19-2).  This Statement provides a fair and accurate description of the relevant record before the Court.  Additional specific facts are discussed as needed to address the parties' arguments.

## Discussion

A. <u>Legal Standard</u>

To be eligible for DIB under the Social Security Act, Nail must prove that he is disabled.  *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001); *Baker v. Secretary of Health & Human Servs.,* 955 F.2d 552, 555 (8th Cir. 1992).  The Social Security Act defines disability as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. § 423(d)(1)(A).  An individual will be declared disabled "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  42 U.S.C. § 423(d)(2)(A).

The Commissioner engages in a five-step evaluation process to determine whether a claimant is disabled.  *See* 20 C.F.R. § 404.1520; *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987).  The first three steps involve a determination as to

G / CLARK / 4 20 cv 1422 Nail SSA

whether the claimant is currently engaged in substantial gainful activity; whether

he has a severe impairment; and whether his severe impairment(s) meets or

medically equals the severity of a listed impairment.  At Step 4 of the process, the

ALJ must assess the claimant's RFC, that is, the most the claimant is able to do

despite his physical and mental limitations, *Martise v. Astrue*, 641 F.3d 909, 923

(8th Cir. 2011), and determine whether the claimant is able to perform his past

relevant work.  *Goff v. Barnhart,* 421 F.3d 785, 790 (8th Cir. 2005) (RFC

assessment occurs at fourth step of process).  If the claimant is unable to perform

his past work, the Commissioner continues to Step 5 and determines whether the

claimant can perform other work as it exists in significant numbers in the national

economy.  If so, the claimant is found not to be disabled, and disability benefits are

denied.

    The claimant bears the burden through Step 4 of the analysis.  If he meets

this burden and shows that he is unable to perform his past relevant work, the

burden shifts to the Commissioner at Step 5 to produce evidence demonstrating

that the claimant has the RFC to perform other jobs in the national economy that

exist in significant numbers and are consistent with his impairments and vocational

factors such as age, education, and work experience.  *Phillips v. Astrue*, 671 F.3d

699, 702 (8th Cir. 2012).  If the claimant has nonexertional limitations, the

Commissioner may satisfy her burden at Step 5 through the testimony of a

G / CLARK / 4 20 cv 1422 Nail SSA

vocational expert.  *King v. Astrue*, 564 F.3d 978, 980 (8th Cir. 2009).

I must affirm the Commissioner's decision if it is supported by substantial

evidence on the record as a whole.  42 U.S.C. § 405(g); *Richardson v. Perales*, 402

U.S. 389, 401 (1971); *Jones v. Astrue*, 619 F.3d 963, 968 (8th Cir. 2010).

Substantial evidence is less than a preponderance but enough that a reasonable

person would find it adequate to support the conclusion.  *Jones*, 619 F.3d at 968.

Determining whether there is substantial evidence requires scrutinizing analysis.

*Coleman v. Astrue*, 498 F.3d 767, 770 (8th Cir. 2007).

I must consider evidence that supports the Commissioner's decision as well

as any evidence that fairly detracts from the decision.  *McNamara v. Astrue*, 590

F.3d 607, 610 (8th Cir. 2010).  If, after reviewing the entire record, it is possible to

draw two inconsistent positions and the Commissioner has adopted one of those

positions, I must affirm the Commissioner's decision.  *Anderson v. Astrue*, 696

F.3d 790, 793 (8th Cir. 2012).  I may not reverse the Commissioner's decision

merely because substantial evidence could also support a contrary outcome.

*McNamara*, 590 F.3d at 610.

B. The ALJ's Decision

The ALJ found that Nail met the insured status requirements of the Act

though December 31, 2019, and had not engaged in substantial gainful activity

since May 1, 2015, the date Nail alleges he became unable to work.  He found that

G / CLARK / 4 20 cv 1422 Nail SSA

Nail has the following severe impairments: vestibular and chronic migraine headaches, a seizure disorder, and cervical degenerative disc disease.  But the ALJ found those impairments do not meet or medically equal a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (Tr. 13-14).  The ALJ then determined that Nail had the residual functional capacity to perform medium work as defined in 20 C.F.R. 404.1567(c) except

> he can lift and carry fifty pounds occasionally and twenty-five pounds frequently. The claimant can sit for six hours, stand for six hours, and walk for six hours in an eight-hour workday. The claimant can never climb ladders, ropes, or scaffolds and he can only occasionally work at unprotected heights and around moving mechanical parts.

(Tr. 15).  Considering his RFC, age, education, and past relevant work, the ALJ found that the vocational expert testimony supported a conclusion that Nail could perform work as it exists in significant numbers in the national economy, and specifically as a counter supply worker, cleaner, and kitchen helper.  (Tr. 19-20).  The ALJ thus concluded that he was not under a disability at any time through his date last insured.  (Tr. 20).

## C. Vestibular and Chronic Migraine Headaches

Nail contends that the ALJ improperly evaluated his vestibular and chronic migraine headaches at Steps 3 and 4 of the sequential evaluation.  He argues that the ALJ should have found that his headaches medically equal the listing for epilepsy at Step 3, and that the ALJ's RFC assessment at Step 4 is not supported by

G / CLARK / 4 20 cv 1422 Nail SSA

substantial evidence. Specifically, he argues that the ALJ erroneously discounted his statements about the intensity, persistence, and limiting effects of his headaches; failed to evaluate the impact of his headaches on his functional abilities; and adopted opinion evidence based on an incomplete record.

1. *Step 4 Error*

A claimant's RFC is the most a claimant can do despite his physical or mental limitations. *Masterson v. Barnhart*, 363 F.3d 731, 737 (8th Cir. 2004). The ALJ bears the primary responsibility for assessing a claimant's RFC based on all relevant, credible evidence in the record, including medical records, the observations of treating physicians and others, and the claimant's own description of his symptoms and limitations. *Goff*, 421 F.3d at 793; *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004); 20 C.F.R. § 404.1545(a). Accordingly, when determining a claimant's RFC, the ALJ must evaluate the consistency of the claimant's subjective statements of symptoms with the evidence of record. [2] *Wagner v. Astrue*, 499 F.3d 842, 851 (8th Cir. 2007); *Tellez v. Barnhart*, 403 F.3d 953, 957 (8th Cir. 2005). In doing so, the ALJ must consider all the evidence

---

[2] The Social Security Administration issued a new ruling that eliminates the use of the term "credibility" when evaluating a claimant's subjective statements of symptoms, clarifying that "subjective symptom evaluation is not an examination of an individual's character." SSR 16-3p, 2017 WL 5180304, at *2 (Soc. Sec. Admin. Oct. 25, 2017) (republished). The factors to be considered in evaluating a claimant's statements, however, remain the same. *See id*. at *13 ("Our regulations on evaluating symptoms are unchanged."). *See also* 20 C.F.R. § 404.1529. This new ruling applies to the Commissioner's final decisions made on or after March 28, 2016.

G / CLARK / 4 20 cv 1422 Nail SSA

relating thereto, including what are familiarly referred to as "the *Polaski* factors," that is, the claimant's prior work record; daily activities; the duration, frequency and intensity of the symptoms; any precipitating and aggravating factors; the dosage, effectiveness and side effects of medication; and any functional restrictions. *Halverson v. Astrue*, 600 F.3d 922, 931 (8th Cir. 2010); *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984) (subsequent history omitted); s*ee also* 20 C.F.R. § 404.1529.

"[T]he duty of the court is to ascertain whether the ALJ considered all of the evidence relevant to the plaintiff's complaints under the *Polaski* standards and whether the evidence so contradicts the plaintiff's subjective complaints that the ALJ could discount his or her testimony as not credible." *Masterson*, 363 F.3d 738-39. Where an ALJ explicitly considers the relevant factors but then discounts a claimant's complaints for good reason, the decision should be upheld. *Hogan v. Apfel*, 239 F.3d 958, 962 (8th Cir. 2001).

Here, the ALJ acknowledged Nail's statements about the intensity, persistence, and limiting effects of his headaches:

> The claimant alleges significant physical limitations that prevent him from performing full-time, competitive employment. The claimant testified that three to four times a week he experiences a severe migraine that can last from hours to days where he cannot tolerate any light, sound, smell, or touch. The claimant further testified that his migraines are accompanied by dizziness, nausea, and vomiting. The claimant discussed that when he has a headache he can only walk for ten minutes at one time, stand for two minutes at one time, and sit for

> two to three minutes at one time. The claimant reported that [he] rarely
> cooks or cleans, but he can take care of his own laundry, and if he is
> headache free, he can drive a couple of miles from his home to the gas
> station. Lastly, the claimant testified that his condition has worsened
> since 2015 and thus far his treatment has not been [e]ffective.[3]

(Tr. 15) (internal citations omitted).  But the ALJ found these statements

inconsistent with the record "because they are not supported by objective evidence,

examination findings, and progress notes of record."  (Tr. 16).  The ALJ's

conclusion appears to be based on an incomplete review of the record as a whole.

At the outset, the ALJ inadequately explained what "objective evidence" or

"examination findings" were inconsistent with Nail's statements about his pain.

The ALJ was required to specify those inconsistencies.  *See Renstrom*, 680 F.3d at

1066 ("When rejecting a claimant's complaints of pain, the ALJ must make an

express credibility determination, detailing the reasons for discounting the

testimony, setting forth the inconsistencies, and discussing the *Polaski* factors."

(quoting *Dipple v. Astrue*, 601 F.3d 833, 837 (8th Cir. 2010))).  He did not do so

here.

The ALJ specified the inconsistencies between Nail's testimony that his

condition worsened since he began treatment and his providers' progress notes.

The ALJ noted that prior to Nail's treatment with neurologist Tariz Jawaid Alam in

---

[3] Nail testified that his condition worsened since 2015 but clarified that his headaches are the
same as they were since 2015.  "No matter what they've done, no matter what they do, it doesn't
– no matter what pills they tell me to take it doesn't seem to affect my headache."  (Tr. 51-52).

G / CLARK / 4 20 cv 1422 Nail SSA

June 2017, Nail made few complaints about his headaches.[4]  (Tr. 16).  In

September 2017, Nail told Dr. Alam that his headaches and dizzy spells improved

after starting Depakote.  (Tr. 16, 416).  Although Nail reported that his headaches

were not under good control after he suffered a seizure in November 2017 (Tr.

420, 439), by his next appointment on December 13, 2017, he reported that his

headaches were stable with Depakote and amitriptyline.  (Tr. 16, 425).  Nail

reported his headaches were under good control to Dr. Alam in March 2018,

although he continued to experience disabling insomnia.  (Tr. 16, 553-54). Finally,

the ALJ discussed Nail's statements to neurologist Michael Snyder in April and

August 2019: "[Nail] reported improvement in the intensity and frequency of his

headaches and some reduction in his chronic dizziness with Depakote, although he

was experiencing some low to moderate grade migrainous features daily, and in

August 2019, [Nail] noted that he was still having daily headaches, but fewer

migraines."  (Tr. 16, 638, 693).

However, the inconsistency between Nail's evaluation of the effectiveness

of his medication regimen at the time of the hearing and his providers' treatment

notes does not "so contradict[ Nail's] subjective complaints that the ALJ could

---

[4] Nail complained of daily episodes of headaches to Christopher Friesen, D.O. on April 28, 2015. (Tr. 367).  On October 25, 2015, Dr. Friesen noted that he treated Plaintiff for chronic migraines, among other impairments.  (Tr. 374).  On April 7, 2016, Nail reported to Dr. Mirha Avdagic that he had migraines three times a year and took Topamax occasionally.  (Tr. 387).

G / CLARK / 4 20 cv 1422 Nail SSA

discount his or her testimony as not credible." *Masterson*, 363 F.3d 738-39.

Though Nail testified that his headaches worsened because he began experiencing

memory loss, he immediately clarified that his headaches were the same as before

treatment.  (Tr. 51).  Dr. Alam reported that Nail's headaches were under good

control with medication in 2017 and 2018, but Nail's subsequent medication

history and progress notes with Dr. Snyder indicate that his headaches were poorly

controlled at the time of the hearing.  Nail's medication was repeatedly modified

and increased because it inadequately controlled his symptoms. [5]  In fact, Dr.

Snyder noted that Nail's medication caused "inadequate improvement overall."

(Tr. 638, 693, 694).  Although Nail "is better on with Depakote than he was before

Depakote," Dr. Snyder determined that Nail "failed standard migraine preventive

medication (Depakote, amitriptyline, Aimovig)" and recommended Botox.[6]  (Tr.

638-39, 693-94).

---

[5] Dr. Alam prescribed 250mg Depakote twice per day on June 27, 2017 (Tr. 414), but doubled
the dosage to 500mg twice per day on September 14, 2017 after Nail stated that he would like to
continue to see improvement in control of his headaches.  (Tr. 419).  Dr. Alam added
amitriptyline 10mg to aid with Nail's sleep on November 28, 2017 (Tr. 423), but his dosage was
increased on December 13, 2017 (Tr. 428) and again on March 14, 2018 (Tr. 553-54).  On
September 25, 2018, Dr. Alam prescribed Midrin as needed for acute headaches.  (Tr. 586).  Dr.
Snyder increased Nail's Depakote dose to 500mg in the morning and 1000mg at night, and
prescribed trazodone on February 6, 2019.  (Tr. 598).  Dr. Snyder also prescribed, but later
discontinued Aimovig.  (Tr. 618, 693, 694).
[6] Nail testified that he received Botox injections the day before the hearing, but Botox did not
alleviate his headaches.  (Tr. 40).

G / CLARK / 4 20 cv 1422 Nail SSA

Nail's statements about the frequency and symptomology of his headaches

were consistent with Dr. Snyder's treatment notes.  Dr. Snyder's note that Nail

continued to experience "chronic daily headaches with *at least* low to moderate

migrainous features (photosensitivity, low-grade nausea, exacerbation of vertigo)

2/3 days per week" (Tr. 638, 693) (emphasis added), is consistent with Nail's

testimony that he experiences headaches 3 to 4 days per week in which he cannot

tolerate light, sound, smell, or touch.  (Tr. 38).  Nail's testimony about the

frequency of his headaches is also corroborated by Dr. Snyder's diagnosis of

vestibular migraine and chronic migraine and his observation that Nail has a

history of more than 15 headache days and 8 migraine days per month, with

headaches lasting longer than 4 hours.  (Tr. 639, 694).

The ALJ cited these treatment notes to show that Nail's headaches had

improved with medication and that Nail's testimony was inconsistent with his

providers' progress notes, but the ALJ did not discuss evidence corroborating

Nail's statements about the frequency and character of his headaches.  While the

ALJ is not required to explain all evidence in the record, he cannot pick and choose

only evidence supporting his conclusion.  *See Wildman v. Astrue*, 596 F.3d 959,

966 (8th Cir. 2010); *Nelson v. Saul*, 413 F. Supp. 3d 886, 916 (E.D. Mo. Sept. 20,

2019); *Taylor ex rel. McKinnies v. Barnhart*, 333 F. Supp. 2d 846, 856 (E.D. Mo.

2004); *Robinson v. Barnhart*, 366 F.3d 1078, 1083 (10th Cir. 2004) ("The ALJ is

G / CLARK / 4 20 cv 1422 Nail SSA

not entitled to pick and choose from a medical opinion, using only those parts that are favorable to a finding of non[-]disability."); *Switzer v. Heckler*, 742 F.2d 382, 385-86 (7th Cir. 1984) ("[T]he Secretary's attempt to use only the portions [of a report] favorable to her position, while ignoring other parts, is improper.").  The ALJ should at least "minimally articulate [its] reasons for crediting or rejecting evidence of disability." *Ingram v. Chater*, 107 F.3d 598, 601 (8th Cir. 1997).  He failed to do so here.

Moreover, the ALJ failed to explain how Nail's persistent headaches affected his functional abilities.  An "RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)."  SSR 96-8P, 1996 WL 374184, at *7 (Soc. Sec. Admin. July 2, 1996).  When a claimant alleges symptoms, such as pain, the RFC assessment must resolve inconsistencies in the evidence, and set forth a logical explanation of the effects of symptoms on the individual's ability to work.  *Id.*

After determining that Nail's statements about his symptoms were inconsistent with the record, the ALJ concluded that Nail's "vestibular and chronic migraines, seizure disorder, and cervical degenerative disc disease . . . limits [him] to a range of medium work" with additional postural restrictions.  (Tr. 17).  Other than discounting Nail's statements about his headaches, the ALJ did not analyze

- 13 -

Nail's headaches as it related to Nail's functional abilities.  Discounting a

claimant's statements is not equivalent to demonstrating by medical evidence that a

claimant has the RFC to perform certain work-related activities.  *Estabrook v.

Apfel*, 14 F. Supp. 2d 1115, 1122 (S.D. Iowa 1998), cited approvingly in *Patton v.

Colvin*, No. 2:14CV47 ACL, 2015 WL 3548823, at *17 (E.D. Mo. 2015).  Instead,

the ALJ must discuss and describe how the evidence supports each conclusion and

explain the effects of the claimant's symptoms on his ability to work.  S.S.R. 96-

8p, 1996 WL 374184 at *7.  Though the record shows Nail's headaches improved

with medication, "it is possible for a person's health to improve, and for the person

to remain too disabled to work."  *Cox v. Barnhart*, 345 F.3d 606, 609 (8th Cir.

2003); s*ee also Hutsell v. Massanari*, 259 F.3d 707, 712 ("[D]oing well for the

purposes of a treatment program has no necessary relation to a claimant's ability to

work or to her work-related functional capacity.").  As explained above, the ALJ

recognized that Dr. Snyder's notes show that Nail experienced chronic daily

headaches with at least low to moderate migrainous features despite medication.

(Tr. 606, 618, 638, 693, 694).  And even though Nail's severe, incapacitating

migraines became less frequent, the record does not show that they completely

ceased.  The ALJ failed to explain the effects of these headaches and migraines on

Nail's ability to work.

The ALJ's adoption of the functional limitations assessed by the state agency non-examining consultant, Dr. David Marty, indicates that the ALJ did not consider the effects of Nail's headaches on Nail's RFC at all.  In April 2018, Dr. Marty opined that Nail was capable of performing a range of medium work with no climbing of ladders, ropes, or scaffolds, and avoiding concentrated exposure to hazards.  (Tr. 17-18, 79-82).  However, Dr. Marty did not discuss Nail's headaches in his opinion; when Dr. Marty formulated his opinion, Nail had not yet claimed any impairment due to his headaches, and the state agency did not list his headaches as a severe impairment.[7]  (Tr. 76).  Thus, it is not clear that Dr. Marty evaluated Nail's headaches when determining that Nail had the functional ability to perform medium work.  Moreover, the bulk of evidence documenting Nail's continuing headaches post-dated Dr. Marty's opinion: Dr. Snyder diagnosed Nail with vestibular migraine and chronic migraines and noted continuing headaches in April and August of 2019 (Tr. 638, 693); audiologist Tori Heitzmann performed a Vestibular-Evoked Myogenic Potentials test which revealed reduced responses in left ear compared to the right ear, "suggestive of migraine induced left-peripheral vestibulopathy" on December 21, 2018 (Tr. 612, 614); and Dr. Joshua Sappington observed that his "current symptomology was most consistent with a central

---

[7] On May 24, 2018, Nail filed a new Disability Report claiming severe headaches as a condition for the first time.  (Tr. 274).

process such as vestibular migraine" and noted that vestibular testing demonstrated "an ocular vemp which was significant" and "could represent dysfunction of the superior vestibular never or could be consistent with vestibular migraine" on April 5, 2019 (Tr. 632).   The ALJ's adoption of Dr. Marty's assessment indicates that Nail's epilepsy and degenerative disc disease alone limited Nail to the medium exertion level with the postural restrictions identified by the ALJ.  Thus, it is not clear that the ALJ attributed any functional limitations to Nail's headaches.

The ALJ's finding that Dr. Marty's opinion is persuasive is not supported by substantial evidence.  For claims like Nail's that are filed on or after March 27, 2017, an ALJ evaluates medical opinions and administrative medical findings pursuant to 20 C.F.R. § 404.1520c.  Under the new regulations, the ALJ must evaluate the persuasiveness of medical opinions and prior administrative medical findings in light of the following factors: (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization, and (5) other factors, such as "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies."  20 C.F.R. § 404.1520c(a)-(c).  Supportability and consistency "are the most important factors" to consider when determining the persuasiveness of a medical source's medical opinions and, therefore, an ALJ must explain how he considered the

G / CLARK / 4 20 cv 1422 Nail SSA

factors of supportability and consistency in his decision.  20 C.F.R.

§ 404.1520c(b)(2).

Here, the ALJ explained that he found Dr. Marty's opinion persuasive

because it was supported and consistent with the record as a whole.  (Tr. 18).  He

specifically noted that "while the claimant is not free from headaches and dizzy

spells, they are improved using a combination of medications."  *Id.*  However,

significant evidence of Nail's migraine headaches post-dated Dr. Marty's opinion,

and neither Dr. Marty nor the ALJ evaluated the limiting effects of Nail's

persistent headaches and dizzy spells on his ability to work.  Dr. Marty's opinion is

therefore inconsistent with the medical evidence documenting continuing

headaches.

In short, the ALJ failed to recognize that "it is possible for a person's health

to improve, and for the person to remain too disabled to work" throughout his RFC

assessment.  *Cox*, 345 F.3d at 609.   He ignored medical evidence corroborating

Nail's continuing headaches, did not discuss or consider the effects of Nail's

continuing headaches on his ability to work, and adopted opinion evidence that did

not evaluate Nail's headaches.  His RFC assessment is therefore not supported by

substantial evidence.

   2.  Step 3 Error

Nail also argues that the ALJ erred at Step 3 of the sequential evaluation when he determined that his vestibular and chronic migraine headaches did not medically equal the listing for epilepsy in 20 C.F.R. Part 404 Subpart P, Appendix 1.

At Step 3 of the sequential evaluation, the ALJ must evaluate whether the claimant's severe impairments meet or equal a listing in appendix 1.  20 C.F.R. § 404.1520(a)(iii).  If the claimant's impairments meet or equal a listing, the ALJ will find that the claimant is disabled.  *Id.*; *McCoy v. Astrue*, 648 F.3d 605, 611 (8th Cir. 2011).  The claimant has the burden of proving that his impairment meets or equals a listing by presenting medical findings equal in severity to all the criteria for the most similar listed impairment.  *McCoy*, 648 F.3d at 611; *Carlson v. Astrue*, 604 F.3d 589, 594 (8th Cir. 2010).

Primary headache disorder is not listed in Appendix 1, but Social Security Ruling 19-4P explains that a primary headache disorder may medically equal a listing.  2019 WL 4169635, at *8 (Aug. 26, 2019).  The listing for Epilepsy, 11.02, is the most closely analogous listed impairment, and "[w]hile uncommon, a person with primary headache disorder may exhibit equivalent signs and limitations to those detailed in listing 11.02 (paragraph B or D for dyscognitive seizures) . . . ." *Id.*

G / CLARK / 4 20 cv 1422 Nail SSA

In order to medically equal listing 11.02, the claimant must provide a detailed description of his headaches from someone, preferably a medical professional, who has observed one of his typical headaches.  40 C.F.R. Pt. 404 Subpt. P, App. 1.  Both Paragraphs B and D require that the claimant experience headaches medically equivalent to "dyscognitive seizures," that is, seizures "characterized by alteration of consciousness without convulsions or loss of muscle control."  *Id.*  Paragraph B requires "[d]yscognitive seizures occurring at least once a week for at least three consecutive months despite adherence to prescribed treatment."  *Id.*  Paragraph D requires "[d]yscognitive seizures occurring at least once every two weeks for at least three consecutive months despite adherence to prescribed treatment, as well as a marked limitation in physical functioning; understanding, remembering or applying information; interacting with others; concentration, persistence, or pace; or adapting and managing oneself."  *Id.*

At Step 3 of the sequential analysis, the ALJ considered whether Nail's migraine headaches medically equal listing 11.02, but found that the

> record does not support that the claimant experiences severe migraine headaches at the frequency described in the listing, nor does the record support that the claimant is markedly impaired in any functional area . . . . As discussed in detail below, the record supports that the claimant's migraine headaches have improved with a combination of oral medications.

G / CLARK / 4 20 cv 1422 Nail SSA

(Tr. 15). [8]  As explained above, the ALJ's subsequent discussion of Nail's

headaches demonstrates that the ALJ did not consider all of the evidence relating

to Nail's continuing headaches and did not consider the effects of Nail's

continuing headaches on his functional abilities.  And other evidence, including

Dr. Snyder's account of Nail's treatment history and diagnoses of vestibular

migraine and chronic migraine, evince a frequency of headaches required by listing

11.02 paragraphs B and D.  Therefore, his conclusion regarding the frequency and

effects of Nail's headaches is not supported by substantial evidence on the record

as a whole.

## Conclusion

For the reasons stated above, the ALJ's decision is not supported by

substantial evidence on the record as a whole.  I will therefore reverse the

Commissioner's final decision and remand the matter for further proceedings.

The Commissioner must reevaluate Nail's RFC, which must include an

assessment of record evidence and Nail's statements about the intensity,

persistence, and limiting effects of his symptoms.  This RFC assessment shall be

accompanied by a discussion of the evidence in a manner that shows how the

---

[8] It is not clear that the ALJ compared Nail's migraine headaches to both listing 11.02
paragraphs B and D.  The ALJ does not identify either paragraphs in his reasoning, and both
paragraphs require different severity and frequency of symptoms.  Paragraph D requires
headaches equivalent to dyscognitive seizures cause a marked impairment in a functional area,
while paragraph B does not.  And paragraph B also requires that the headaches occur once a
week while, paragraph D only requires headaches once every two weeks.

G / CLARK / 4 20 cv 1422 Nail SSA

evidence supports each RFC conclusion, and how Nail's vestibular migraines and chronic migraines limit his functional abilities.  Whether and to what extent the Commissioner finds opinion evidence persuasive in assessing Nail's RFC must be properly informed and supported by the record as a whole.

Accordingly,

**IT IS HEREBY ORDERED** that the decision of the Commissioner is **REVERSED**, and this case is **REMANDED** for further proceedings.

A separate Judgment in accordance with this Memorandum and Order is entered this same date.


_____
CATHERINE D. PERRY
UNITED STATES DISTRICT JUDGE

Dated this 21st day of March, 2021.